UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTH CITY MOTORS, INC., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>AUTOMOTIVE INDUSTRIES PENSION TRUST FUND, et al.,<br><br>        Defendants. | Case No.  15-cv-01068-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND ORDER GRANTING DEFENDANTS' MOTION TO STAY PENDING ARBITRATION**<br><br>Re: ECF No. 15 |

Before the Court is Defendant Automotive Industries Pension Trust Fund, et al.'s Motion to Dismiss or in the Alternative Stay Pending Arbitration. ECF No. 15. For the reasons set forth below, the motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion to stay pending arbitration is GRANTED.

## I. BACKGROUND[1]

Plaintiffs South City Motors, Inc. ("South City") and Capitol Expressway Ford, Inc. ("Capitol") are two Ford dealerships sponsored by Plaintiff Ford Motor Company's dealer development program. ECF No. 1, ¶ 6. In 2005, both South City and Capitol entered into collective bargaining agreements that required each to make contributions to Defendant Automotive Industries Pension Trust Fund (the "Plan"), a multiemployer pension plan established under the Employee Retirement Income Security Act of 1974 ("ERISA") as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). Id., ¶¶ 13-16. South City signed a Pension Agreement with the Plan agreeing to be bound by the Trust Agreement beginning September 1, 2005. Id. Capitol signed a Pension Agreement with the Plan effective

---

[1] The Court accepts the following allegations as true for the purpose of resolving Defendants' motion to dismiss. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337–38 (9th Cir.1996).

August 27, 2005.  Id.  It also signed a Pension Agreement with the Plan effective August 27, 2005.  Id.

ERISA permits a multiemployer plan to adopt a walk-away provision that allows employers to participate in the plan for a limited period of time without incurring pension withdrawal liability upon withdrawal from the plan.  See ERISA § 4210(a), 29 U.S.C. § 1390(a).  Such a term is called a "free look" provision, and it applies if a pension plan adopts it.  The Plan contained a "free look" provision, which exempted an employer from withdrawal liability if the employer had an obligation to contribute to the Plan after March 1, 2005 and contributed for no more than five consecutive plan years preceding the year of its withdrawal.  ECF No. 1, ¶¶ 12-13.  South City and Capitol both withdrew from the Plan after contributing for fewer than five years.  Id., ¶¶ 14, 16.

When South City and Capitol withdrew, however, the Plan assessed Plaintiffs with withdrawal liability notwithstanding the "free look" provision.  Id., ¶17.  Defendants included Plaintiffs in a "controlled group" of contributing employers that were at least 80% owned by Ford Motor Company (the "Ford control group").  Id.  Defendants argued that for withdrawal purposes, businesses under common control are treated as a single employer.  Id., ¶ 20.  Other dealerships in the Ford control group contributed to the Plan prior to Plaintiffs, thereby taking the entire group of dealerships outside the five year "free look" period.  Id.  Plaintiffs contend that Defendants misapplied the Plan, because Plaintiffs have the right to have the "free look" provision apply to Plaintiffs individually, and not only to the Ford control group as whole.  Id., ¶¶ 17-18.

Plaintiffs pointed to two provisions in the Trust Agreement in support of their interpretation.  First, they noted that the Trust Agreement's "free look" provision states that an employer who would otherwise have withdrawal liability under ERISA would not be liable to the Plan if the employer met certain criteria.  Id., ¶ 12.  Specifically, the amended Trust Agreement provides in relevant part that "an Employer who withdraws from the Plan will not be liable for pension withdrawal liability under ERISA Subtitle E" if the employer first had an obligation to contribute to the Plan after March 1, 20015 and was obligated to contribute to the Plan for no more than five consecutive plan years preceding the year of withdrawal.  Id.

2

Second, Plaintiffs noted that the Trust Agreement provided for a general definition of "Employer" – defined as "any association, individual, partnership, joint venture, trust, corporation or other entity, which at the time of reference, has a Pension Agreement in effect and is a party to this Trust Agreement." Id. Defendants, however, applied the statutory definition of "employer" applied under ERISA section 4001(b)(1), whereby businesses with 80% common ownership are treated as a group under "common control" and treated as a single employer.[2] Id., ¶ 20.

Plaintiffs and others in the Ford control group initiated arbitration proceedings on December 12, 2012 to challenge the Plan's withdrawal liability, arguing that the "free look" provision exempted them from liability. Id., ¶ 18. Plaintiffs raised multiple defenses contending that: the Plan's "free look" provision applied on a non-controlled group basis; Plaintiffs did not trigger withdrawal liability because their withdrawals were exempt under the "free look" provision; equitable principles prevented the application of the "free look" provision on a controlled group basis; Plaintiffs only agreed to contribute to the Plan because it had a non-controlled group "free look" provision; and if the "free look" rule were to apply on a controlled group basis, then the contribution was void due to mutual mistake of fact. Id.

On July 18, 2014, the arbitrator ruled that certain issues were not arbitrable, specifically estoppel, mistake, and other equitable defenses to withdrawal liability, and denied Plaintiffs' discovery requests. Id., ¶ 19. Arbitration has been suspended pending the outcome of proceedings in this action. Id.

Plaintiffs filed this case on March 6, 2015, making claims for fraudulent concealment, negligent concealment, and equitable estoppel, and seeking both restitution and declaratory relief. They allege that the Defendants fraudulently and negligently misrepresented that the "free look" provision would apply to Plaintiffs on a non-controlled group basis. They seek to estop Defendants from collecting withdrawal liability payments with respect to Plaintiffs, to receive restitution for mistaken contributions, and to obtain declaratory relief that the Plan's "free look"

---

[2] Section 4001(b)(1) of ERISA states that "[A]ll employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1).

provision applies to Plaintiffs on a non-controlled group basis consistent with the Trust Agreement's definition of "Employer." See ECF No. 1.

Defendants now move the Court to dismiss Plaintiffs' Complaint or, in the alternative, stay this action until the arbitrator decides the central issue in the case. ECF No. 15.

## II. JURISDICTION

The Court has jurisdiction pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

## III. MOTION TO DISMISS

### A. Legal Standard

When addressing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts must determine whether a plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005). Even though the Court must accept all factual allegations in the complaint as true, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Allegations in a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

In addition, fraud-based claims are subject to a heightened pleading standard under Federal Rule of Evidence 9(b). This heightened standard applies when evaluating a Rule 12(b)(6) motion to dismiss. Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Fraud allegations must be specific enough to give the defendant notice of the particular misconduct alleged to constitute the fraud so that the defendant may defend against the charge. Id. In general, allegations sounding in

fraud must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007). On the other hand, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b). State law causes of action must comport with the heightened pleading requirements of Rule 9(b) where applicable. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).

If a court dismisses the complaint or a claim alleged therein, it must grant leave to amend unless amendment would be futile. Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

### B. Analysis

#### 1. Fraudulent inducement/concealment

The elements of a cause of action for fraud based on concealment are:

> (1) [T]he defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

Bank of Am. Corp. v. Superior Court, 198 Cal. App. 4th 862 (2011).

The elements of fraud must be satisfied within the context of Rule 9(b). See Moore v. Brewster, 96 F.3d 1240, 1245 (9th Cir. 1996). Allegations of fraud must be "accompanied by the who, what, when, where, and how of the misconduct charged." Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). However, a plaintiff alleging fraudulent concealment will "not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007). Thus, a fraud by concealment claim "can succeed without the same level of specificity required by a normal fraud claim." Id. (citing Washington v. Baenziger, 673 F.Supp. 1478, 1482 (N.D. Cal. 1987)).

Turning to the elements of this claim, the Court concludes that Plaintiffs have adequately

5

alleged materiality. Non-disclosed information is material if "had the omitted information been disclosed, one would have been aware of it and behaved differently." Id. at 1095 (citations omitted). Plaintiffs allege that Defendants failed to disclose that Defendants would apply ERISA's controlled group provision to the term "Employer" rather than the Trust Agreement's definition. The Trust Agreement's definition for the term "Employer" omits any reference to a "controlled group," but Defendants applied the "free look" provision on that basis. Plaintiffs plausibly allege that South City and Capitol would not have entered into their collective bargaining agreements had they known that the "free look provision would apply on a controlled group basis. See ECF No. 1, ¶ 26.

Plaintiff's fraudulent concealment claim still fails, however, because Defendants had no duty of disclosure to Plaintiffs. A duty to disclose arises

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.

Falk, 496 F. Supp. 2d at 1095 (quoting LiMandri v. Judkins, 52 Cal.App.4th 326, 337 (1997).

Defendants are not in a fiduciary relationship with Plaintiffs. ERISA section 404 states that fiduciaries of the Trust Fund must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104. ERISA defines "participants" to include "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan." Id. at § 1002(7). Thus, Trustees owe a fiduciary duty to employees who may receive benefits from an employee benefit plan. See United Foods v. W. Conference of Teamsters Pension Trust Fund, 816 F. Supp. 602, 614 (N.D. Cal. 1993) ("Trustees owe fiduciary duties solely to the participants and beneficiaries of the pension plan, not to employers."). Because Plaintiffs are employers, there is no fiduciary relationship between Defendants and Plaintiffs that would create a duty to disclose.

Plaintiffs also do not plausibly allege that Defendants had exclusive knowledge over a

6

material fact or that Defendants actively concealed a material fact. The Amended Trust Agreement's "free look" provision references the relevant statutory provision. ECF No. 1, ¶ 12. Plaintiffs had equal access to the relevant law, including the statutory definition of "employer" that includes all "trades or businesses" that are under "common control." 29 U.S.C. § 1301(b)(1); see <u>Central States, SE and SW Areas Pension Fund v. Safeway, Inc.</u>, 229 F.3d 605, 608 (7th Cir. 2000) (regulations are notices to the world).

      Plaintiffs also do not plausibly allege that Defendants made any representations, much less partial representations, of fact. For example, nothing in the definition of "Employer" indicates that it would not include a group of contributing employers under common ownership, and nothing in the amendment to the Trust Agreement represents that the Trust Fund would not apply ERISA's controlled group provision to the term "Employer." Moreover, even if the terms at issue were representations, they do not make a statement about any "past or existing facts" such that further facts are necessary to make the representations complete. See <u>Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells</u>, 86 Cal. App. 4th 303, 309 (2000) ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts . . . ."). Rather, the terms of the contract state a promise of future action, as to which the parties now have different legal interpretations.

      Plaintiffs' authorities do not support their position. For example, in <u>Apollo Capital Fund, LLC v. Roth Capital Partners, LLC</u>, 158 Cal. App. 4th 226 (2007), investors in an internet service company's bridge notes brought a fraud claim against a broker-dealer. <u>Id.</u> at 234. Plaintiff alleged that the broker-dealer's principal drafted offering documents which contained false statements of fact and also made false oral representations. <u>Id.</u> at 238-239. The complaint identified several such misrepresentations and omissions, both written and oral, on topics such as the likelihood of repayment of the notes, whether the issuing entity would merge with another firm, whether the issuing entity would be "cash flow positive," and numerous other specific facts. <u>Id.</u> The court concluded that the plaintiff's complaint stated a claim for common law fraud. <u>Id.</u> at 243. Here, unlike the situation in <u>Apollo Capital Fund</u>, Plaintiffs allege no such actionable misrepresentations.

7

Finally, Plaintiffs argue that the Complaint states a *prima facie* case of fraudulent concealment under federal common law. Plaintiffs cite to Carl Colteryahn Dairy, Inc. v. Pennyslvania Teamsters and Emp. Pension Fund, 847 F.2d 113 (3d Cir. 1998), cert. denied, 488 U.S. 1041 (1989), where the Third Circuit recognized a federal common law fraud claim. There, an employer alleged that its pension fund, trustees, and others employed by the fund misrepresented the status of the pension fund when it merged with another fund. Id. at 117. The employer alleged that the fund fraudulently failed to disclose large unfunded liabilities that predated the merger. Id. The employer then withdrew from the fund but was imposed a large withdrawal liability assessment. Id. The employer stated that it would not have approved the merger had it known of the unfunded liabilities and that the withdrawal liability assessment consisted of primarily pre-merger undisclosed liabilities. Id. at 122 n. 13. The court held that the employer could sue in federal court for the return of any withdrawal liability sums assessed as a result of the fraudulent inducement to join the fund. Id. at 118.

This case is not like Colteryahn. In that case, there were both affirmative misrepresentations and concealments of the pension fund's financial condition. Id. at 120. By contrast, as stated earlier, Plaintiffs here have alleged neither an affirmative misrepresentation nor an actionable concealment. So, even assuming for the sake of argument that a federal common law fraud cause of action exists in this Circuit, the Court concludes that Plaintiffs' alleged fraud claim does not fall within any such cause of action.

Accordingly, the Court GRANTS Defendants' Motion as to Plaintiffs' claim for fraudulent concealment with leave to amend.

### 2. Negligent Misrepresentation/Concealment

Elements for negligent misrepresentation consist of:

> (1) A misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages.

Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1986). Negligent misrepresentation differs

8

with fraud in regards to one essential element: mental state.[3]  Petersen v. Allstate Indem. Co., 281 F.R.D. 413, 418 (C.D. Cal. 2012).  Negligent misrepresentation requires that the defendant "lacked any reasonable ground for believing [its] statement to be true," but fraud requires that the defendant "made an intentionally false statement." Id. at 417 (quoting Charnay v. Cobert, 145 Cal. App. 4th 170, 184 (2006)).

Plaintiffs' negligent misrepresentation claim fails for two reasons.  First, as discussed earlier, Plaintiffs have not adequately alleged that Defendants made a statement of past or existing material fact.  Instead, Plaintiffs allege that Defendants failed to inform them that Defendants would apply the withdrawal liability provision on a controlled group basis.  This is not a statement of past or existing material fact.

Second, negligent misrepresentation requires a positive assertion.  Omissions or nondisclosures cannot give rise to a negligent misrepresentation claim.  Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc., 913 F.Supp.2d 780, 789 (N.D. Cal. 2012).  Thus, a failure to disclose may give rise to a claim for fraud, but it will not support a claim for negligent misrepresentation. Id.

Accordingly, the Court GRANTS Defendants' Motion as to Plaintiffs' claim for negligent misrepresentation with leave to amend.

### 3. Equitable Estoppel

Plaintiffs' equitable estoppel claim seeks to compel Defendants to comply with the Trust Agreement based on the Trust Agreement's definition of "Employer." ECF No. 18 at 8.  Although ERISA preempts state claims based on equitable estoppel, Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1095 (9th Cir.1985), the Ninth Circuit has recognized that, in certain circumstances, federal equitable estoppel principles apply to some claims arising under ERISA. Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d 812, 821 (9th Cir.1992).  In order to state a cause of action for equitable estoppel in an ERISA action, a plaintiff must allege: "a material misrepresentation,

---

[3] The Court will conform to its prior determination that negligent misrepresentation claims are not subject to the heightened standard of Rule 9(b). See Howard v. First Horizon Home Loan Corp., No. 12-CV-05735, 2013 WL 6174920, at *5 (N.D. Cal. Nov. 25, 2013).

reasonable and detrimental reliance upon the representation, extraordinary circumstances, that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect, and finally, that representations were made involving an oral interpretation of the plan." Spink v. Lockheed Corp., 125 F.3d 1257, 1262 (9th Cir. 1997).

Plaintiffs assert that the Trust Fund should be estopped from applying withdrawal liability on a controlled group basis. As discussed above, however, Plaintiffs' have failed to adequately allege a material misrepresentation, and have not alleged that "representations were made involving an oral interpretation of the plan." For these reasons, the Court also dismisses the equitable estoppel claim.

As to this claim, the Court's order is without leave to amend. Defendants correctly argue that Plaintiffs' estoppel claim is not cognizable because they have no power to circumvent the provisions of ERISA, even if the parties agree to do so. ECF No. 15 at 12 (citing EUSA-Allied Acquisition, Corp. v. Teamsters Pension Trust Fund of Philadelphia & Vicinity, No. 11-3181, 2011 WL 3651315 (D.N.J. Aug. 18, 2011).

In EUSA-Allied Acquisition, the employer plaintiff began contributing to the trust fund after signing an agreement that included a "free look" period. 2011 WL 3651315 at *1. The Agreement stated that plaintiff would face no withdrawal liability to the fund under the MPPAA so long as it contributed for no more than five plan years. Id. The employer thought this meant it could withdraw from the fund up to sixty months after its initial contributions. Id. Employer withdrew four years and eleven months after beginning contributions. Id. at *2. The fund concluded that the "free look" period had expired several months earlier. Id. Plaintiff brought an action alleging that fund fraudulently misrepresented the period of time that the plaintiff could withdraw under the agreement. Id. The court denied the employer's motion for preliminary injunction holding that the employer could not justifiably rely on the specific wording of the plan when it referenced the more restrictive language of the MPPAA for the vesting period and when parties could not modify withdrawal liability under the MPPAA by private agreement. Id. at *7.

Plaintiffs attempt to distinguish EUSA-Allied Acquisition, arguing that the "free look" provision of ERISA section 4210 does not itself define "Employer" and that applying the Trust

Agreement of definition would not conflict with any term of section 4210. See ECF No. 18 at 7. However, this argument is unavailing because the subchapter governing withdrawal liability does provide for a definition of employer. See 29 U.S.C. § 1301(b) ("For purposes of this subchapter . . . all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer.); Robbins v. Pepsi-Cola Metro. Bottling Co., 636 F. Supp. 641, 654 (N.D. Ill. 1986) ("Section 1301(b)(1)'s definition of employer clearly applies to all decisions relating to withdrawals from multiemployer pension plans. Section 1301(b)(1) specifically states that the controlled group provision *shall apply* "for the purposes of this Title.").

Because the Court concludes that any amendment to Plaintiffs' equitable estoppel claim would be futile, that claim is dismissed with prejudice.

### 4. Declaratory Judgment

A claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, applies "in a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). A "controversy" must be one that is appropriate for judicial determination. Osborn v. Bank of United States, 9 Wheat. 738, 819. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. South Spring Gold Co. v. Amador Gold Co., 145 U.S. 300, 301 (1892). "The appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." Snodgrass v. Provident Life & Acc. Ins. Co., 147 F.3d 1163, 1167-68 (9th Cir. 1998).

Plaintiffs allege that there is an actual controversy between Plaintiffs and Defendants with respect to the rights and obligations of the parties. ECF No. 1, ¶ 41. Plaintiffs seek a declaration that Defendants' withdrawal liability assessment should be rescinded on the ground that Plaintiffs' obligation to contribute to the plan was fraudulently induced by Defendants. Id., ¶ 42.

Plaintiffs' declaratory relief claim must be dismissed. A claim for declaratory relief fails where the Plaintiff seeks to redress past wrongs rather than seek declaration as to future rights.

See Edejer v. DHI Mortg. Co., 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009).  As Defendants point out, the withdrawal liability assessment in this case has already occurred.

Plaintiffs' declaratory relief claim must also be dismissed because Plaintiffs' request for declaratory relief depends on whether Defendants "fraudulently induced" Plaintiffs to make contributions to the plan.  See ECF No. 1, ¶ 41.  Declaratory relief is not a standalone claim.  See 28 U.S.C. §§ 2201, 2202; Fiedler v. Clark, 714 F.2d 77, 79 (9th Cir. 1983) ("The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court . . . . It only permits the district court to adopt a specific remedy when jurisdiction exists.") (citations omitted).  The Court having already determined that no viable misrepresentation cause of action remains to support Plaintiff's request for declaratory relief, that request is dismissed.  The Court grants leave to amend the Complaint to include a request for declaratory judgment if the request is supported by at least one additional cause of action.

### 5. Restitution of Mistaken Contributions

ERISA § 403(c)(2)(A) permits a multiemployer trust fund to return to an employer contributions made by a mistake of law or fact.  29 U.S.C. § 1103(c)(2)(A ).  Section 403 gives an employer an implied right of action to recoup mistaken contributions.  Award Serv., Inc. v. N. Cal. Retail Clerks Unions & Food Emp'r Joint Pension Fund, 763 F.2d 1066, 1068 (9th Cir. 1985); British Motor Car Distrib., Ltd. v. San Francisco Auto. Indus. Welfare Fund, 882 F.2d 371, 374 (9th Cir. 1989).  An employer is entitled to a refund if it can establish that it made a mistaken contribution within the meaning of ERISA section 403(c)(2)(A)(ii).  29 U.S.C. § 1103(a)(2)(A)(ii).  "The right to a refund is not automatic, however, even if the employer can demonstrate the requisite mistake of fact or law; the employer must also show that the equities favor restitution."  Alaska Trowel Trades Pension Fund v. Lopshire, 103 F.3d 881, 885 (9th Cir. 1996).

Plaintiffs contend that they entered into collective bargaining agreements based on the bargaining parties' mutual and good faith belief that the Plan's "free look" provision would apply to Plaintiffs.  ECF No. 1, ¶ 46.  Defendants assert that Plaintiffs' restitution of mistaken contribution claim should be dismissed because Plaintiffs only alleged a conditional mistake and

that Plaintiffs failed adequately to allege that the equities favor a refund to them. ECF No. 15 at 16.

At the motion to dismiss stage, Plaintiffs need only plausibly allege that the balance of equities tips in their favor. Whether they can prevail on this claim will require the Court to weigh the evidence on the merits. See Award Serv., 763 F.2d at 1069; Chase v. Trustees of W. Conference of Teamsters Pension Trust Fund, 753 F.2d 744, 753 (9th Cir. 1985). Plaintiffs have stated a claim adequately to survive a motion to dismiss.

Defendants' motion to dismiss the claim of relief for restitution of mistaken contributions is denied.[4]

## IV.   MOTION TO STAY PENDING ARBITRATION

### A.   Legal Standard

A district court's discretion to stay proceedings "is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). This rule does not require that the issues in the other proceedings are necessarily controlling of the action before the court. Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979). A district court may stay its proceedings in favor of arbitration in ERISA cases. Fujikawa v. Gushiken, 823 F.2d 1341 (9th Cir.1987), cert. denied, 108 S. Ct. 2913 (1988). The court should premise the stay on: (1) "receipt of satisfactory assurances that the arbitration is proceeding with diligence and efficiency," . . . and (2) a determination that the relief available under [the relevant statutory provision] will not be jeopardized by the stay. Id. at 1347 (quoting Amaro v. Continental Can Co., 724 F.2d 747, 725 (9th Cir. 1984)).

### B.   Analysis

Plaintiffs demanded arbitration, but then brought this action upon learning that the arbitrator did not have jurisdiction to hear Plaintiffs' estoppel, mistake, and other defenses to

---

[4] Defendants argue for the first time in their reply brief that Plaintiffs' damages claims are time-barred. See ECF No. 20 at 8-10. The Court has not considered this argument. "It is inappropriate to consider arguments raised for the first time in a reply brief." Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F.Supp.2d 1078, 1089 (E.D. Cal. 2006).

13

1  withdrawal liability. ECF No. 1, ¶ 19. A hearing in the arbitration proceedings has not yet
2  occurred. ECF No. 1, ¶ 10.
3        Defendants contend that this action should be stayed while the arbitrator decides whether
4  the "free look" provision applies on a controlled group basis. See ECF No. 15 at 17. Defendants
5  argue that by not staying the case, the court would inappropriately interfere with the arbitrator's
6  authority under ERISA these issues in a mandatory MPPAA arbitration.[5] Id. Defendants contend
7  that after the parties know the extent of their withdrawal liability, the Court can then determine
8  whether Plaintiffs' are entitled to return of payments. Id.
9        Staying proceedings in this action is appropriate under the guidelines established by
10 Amaro and Fujikawa. The parties have already begun arbitration and the arbitration is in abeyance
11 pending the decision in this motion. See ECF No. 20 at 10. The equitable relief sought by
12 Plaintiffs can later be decided by the Court should the arbitrator decide that the "free look"
13 provision applies and Plaintiffs are then assessed with withdrawal liability. Because allowing
14 arbitration to proceed first would conserve judicial resources and would not jeopardize the relief
15 sought by Plaintiffs, Defendants' motion to stay pending arbitration is GRANTED. All further
16 proceedings are stayed until arbitration is completed.

## CONCLUSION

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion to dismiss is GRANTED as to the fraudulent inducement/concealment, negligent representation/concealment, equitable estoppel, and declaratory relief claims, and DENIED as to the restitution of mistaken contributions. Defendants' motion to stay pending arbitration is GRANTED.

The parties shall notify the Court within ten days of the conclusion of arbitration, and shall request that the Court reopen this matter or take other action consistent with the resolution of the arbitration.

---

[5] Section 1401 compels arbitration for disputes arising out of sections 1381 through 1399; section 1381 imposes withdrawal liability upon an employer that withdraws from a multiemployer plan in a complete or partial withdrawal. See 29 U.S.C. §§ 1381, 1401.

The case management conference scheduled for August 5, 2015 is vacated.

**IT IS SO ORDERED.**

Dated: August 4, 2015

_____
JON S. TIGAR
United States District Judge